1  STEPHANIE M. HINDS (CABN 154284)
   United States Attorney
2
   THOMAS A. COLTHURST (CABN 99493)
3  Chief, Criminal Division

4  JARED S. BUSZIN (NYBN 5285838)
   Assistant United States Attorney
5
        450 Golden Gate Avenue, Box 36055
6       San Francisco, California 94102-3495
        Telephone: (415) 436-7199
7       FAX: (415) 436-7234
        Jared.Buszin@usdoj.gov
8
   Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 3-22-mj-71418 MAG |
| Plaintiff, | **MEMORANDUM IN SUPPORT OF UNITED STATES' MOTION FOR DETENTION** |
| v. | Date: November 9, 2022 |
| ENRIQUE RAMIREZ, a/k/a "Allan Ramirez," | Time: 10:30 a.m. Court: Hon. Alex G. Tse |
| Defendant. | |

UNITED STATES' DETENTION MEMORANDUM      1
3-22-mj-71418 MAG

# INTRODUCTION

The defendant, Enrique Ramirez, is a 20-year-old Honduran national with minimal ties to this District who is currently in the midst of removal proceedings. Mr. Ramirez told law enforcement earlier this year that he entered the United States in July 2021 to earn money to send back to his wife and child in Honduras. He has pursued that purported goal by selling significant quantities of narcotics in the Bay Area, which has now resulted in his arrest for the fourth time this year on narcotics-related charges.

Mr. Ramirez has repeatedly possessed significant quantities of fentanyl, as well as other drugs, for sale. For example, in May of this year, he was arrested for possessing approximately 335.5 grams (gross) of a mixture containing fentanyl, and in July of this year he was arrested for possessing approximately 453.4 grams (gross) of a mixture containing fentanyl. In recent months, he sold an undercover SFPD officer fentanyl and/or methamphetamine numerous times, doing so on several occasions in violation of a stay away order issued in connection with ongoing state proceedings. Mr. Ramirez has also repeatedly possessed loaded firearms in violation of federal law. This includes a Glock 26 firearm and fully loaded 31-round extended magazine that were found in his possession in July 2022, as well as a loaded Smith & Wesson firearm that was concealed beneath Mr. Ramirez's clothing when his residence was searched last week.

The activities of Mr. Ramirez and others who similarly peddle fentanyl and other drugs in San Francisco for a living have been deadly for the citizens of this city. In 2020 and 2021, approximately 1,300 people died from drug overdoses in San Francisco—nearly twice the number who died from COVID-19 over that same period. And about three quarters of those overdose victims—or about 1,000 people—had fentanyl in their systems.[1] The scourge continues in 2022, with San Francisco currently on pace to have nearly 600 overdose deaths by the end of this year.[2] The area where Mr. Ramirez sold his drugs is among the most seriously affected places in the city, prompting Mayor London Breed to declare a 90-day state of emergency in the Tenderloin and the surrounding area in late 2021.[3] As the Mayor

---

[1] Trisha Thadani, et al., *San Francisco's fentanyl crisis: A disaster in plain sight*, S.F. Chron., Feb. 2, 2022 (https://www.sfchronicle.com/projects/2022/sf-fentanyl-opioid-epidemic/).

[2] *See* Yoohyun Jung, *44 People Died in August in San Francisco from Accidental* Overdoses, S.F. Chronicle, https://www.sfchronicle.com/projects/2021/san-francisco-drug-overdoses-map/ (last updated Sept. 26, 2022).

[3] "Mayor London Breed Declares State of Emergency in the Tenderloin," Dec. 17, 2021

UNITED STATES' DETENTION MEMORANDUM   2
3-22-mj-71418 MAG

stated in her announcement, the "rapidly deteriorating conditions in the Tenderloin caused by the opioid crisis put the lives of San Franciscans in serious risk."

In this case, Mr. Ramirez must overcome a rebuttable presumption that no condition or combination of conditions will reasonably assure his appearance and the safety of the community. The record demonstrates that he cannot rebut that presumption. Accordingly, the government respectfully requests that the Court order Mr. Ramirez be detained pending trial.

I.      **FACTUAL BACKGROUND**

      **A.    Mr. Ramirez Was Arrested Three Times in 2022 on Narcotics-Related Charges Before the Conduct Set Forth in the Complaint Occurred**

In the brief period that Mr. Ramirez has been in the United States, he has been arrested numerous times for drug trafficking activity. He was first arrested in Daly City on March 20, 2022, for possessing and transporting narcotics for sale. In that incident, Mr. Ramirez was arrested during a traffic stop when he was found to be in possession of a backpack containing a scale along with numerous plastic bindles of suspected fentanyl, cocaine, and cocaine base that were determined by law enforcement to have an approximate total gross weight of 15.08 ounces (427 grams).

Less than eight weeks later—on May 12, 2022—Mr. Ramirez was arrested in the Tenderloin of San Francisco for possessing a loaded firearm and narcotics for sale. In that incident, Mr. Ramirez was the driver and sole occupant of a vehicle in which law enforcement found a backpack on the rear floorboard that contained, among other things, (i) a Glock 26 firearm, (ii) a fully loaded 31-round extended magazine, (iii) numerous baggies of suspected fentanyl weighing approximately 335.5 grams (gross),[4] and (iv) a digital scale. SFPD officers also seized $710 in suspected drug proceeds from Mr. Ramirez's pockets. There is currently a pending state case against Mr. Ramirez in connection with this incident, and on July 27, 2022, the San Francisco Superior Court issued a stay away order requiring Mr.

---

(https://sfmayor.org/article/mayor-london-breed-declares-state-emergency-tenderloin). On December 23, 2021, the San Francisco Board of Supervisors voted to approve Mayor Breed's Emergency Declaration in the Tenderloin. *See* "Board of Supervisors Approves Mayor London Breed's State of Emergency Declaration in the Tenderloin," Dec. 23, 2021 (https://sfmayor.org/article/board-supervisors-approves-mayor-london-breed%E2%80%99s-state-emergency-declaration-tenderloin). The State of Emergency was kept open for 90 days.

    [4] SFPD tested the suspected fentanyl using a TruNarc analyzer. The baggies of suspected fentanyl tested either presumptive positive for fentanyl or "clear mannitol." Mannitol is a cutting agent frequently mixed with fentanyl.

UNITED STATES' DETENTION MEMORANDUM      3
3-22-mj-71418 MAG

Ramirez to stay at least 150 yards away from the intersection of Ellis Street and Hyde Street in the Tenderloin.

On July 21, 2022, Mr. Ramirez was arrested a third time for possessing narcotics for sale. In this incident, Mr. Ramirez was observed engaging in a suspected narcotics transaction in the Tenderloin with the occupant of a vehicle. Mr. Ramirez—who was wearing a bag—walked away from the vehicle after seeing the police and discarded his bag under a car parked along the curb. The bag was subsequently seized by law enforcement and determined to have, among other things, baggies containing 453.4 grams (gross) of suspected fentanyl and 14.9 grams (gross) of suspected methamphetamine.[5]

### B. Mr. Ramirez Repeatedly Sold Fentanyl and/or Methamphetamine to an Undercover Officer

On August 31, 2022, an undercover SFPD officer ("UC") contacted Mr. Ramirez on his cell phone[6] to coordinate what would become the following series of controlled purchases of narcotics:

- On August 31, 2022, Mr. Ramirez sold the UC 8.74 grams (net) of a substance containing fentanyl for $100.[7] This controlled purchase occurred in the vicinity of the intersection of Hyde Street and O'Farrell Street in the Tenderloin—one block south of the location specified in the July 27, 2022, stay away order issued by the San Francisco Superior Court.

- On September 15, 2022, Mr. Ramirez sold the UC approximately 30.1 grams (gross) of a substance containing fentanyl for $450.[8] This controlled purchase also took place in the vicinity of the intersection of Hyde Street and O'Farrell Street, in apparent violation of Mr. Ramirez's stay away order.

- On September 27, 2022, Mr. Ramirez sold the UC approximately 58.1 grams (gross) of a substance containing fentanyl for $900 in the vicinity of 833 Mission Street in San

---

[5] The suspected fentanyl tested presumptive positive for fentanyl or "clear mannitol" based on testing conducted using a TruNarc Analyzer. The suspected methamphetamine tested presumptive positive for methamphetamine.

[6] The UC contacted Mr. Ramirez via the cell phone number that he had previously provided to police in connection with two of his narcotics-related arrests earlier this year.

[7] The Alameda County Sheriff's Office Crime Lab ("Alameda Crime Lab") tested this substance and determined that it contained fentanyl.

[8] The Alameda Crime Lab tested a portion of this substance and determined that it contained fentanyl.

Francisco.[9]

- On October 4, 2022, Mr. Ramirez sold the UC approximately 56.9 grams (gross) of a substance containing methamphetamine for $500 in the vicinity of 1045 Mission Street in San Francisco.[10]

In addition to these controlled purchases with the UC, Mr. Ramirez was detained on November 1, 2022, after he sold 1.7 grams (gross) of suspected fentanyl to a different SFPD undercover officer during a buy/bust operation at 7th Street and Mission Street in San Francisco.[11]

### C. Law Enforcement Seized Narcotics and a Loaded Firearm in the Course of Arresting Mr. Ramirez and Searching His Residence

On November 3, 2022, law enforcement arrested Mr. Ramirez and searched his residence and vehicle pursuant to federal warrants. Mr. Ramirez was arrested after he left his residence carrying a backpack, which contained 113 grams (gross) of suspected fentanyl, 11.4 grams (gross) of suspected cocaine base, and a digital scale. During a search of the residence, law enforcement identified a living space adjacent to a small kitchenette. There were numerous pieces of indicia associated with Mr. Ramirez in the living space, which largely consisted of a bed, television, and cardboard box with clothing and other items. Law enforcement ultimately found a loaded Smith & Wesson 9 mm firearm beneath clothing in the cardboard box, as well as an additional 57.8 grams (gross) of suspected fentanyl in the kitchenette.

### D. Mr. Ramirez Has Significant Ties to Honduras and Minimal Ties to This District

Mr. Ramirez appears to have spent most of his life in Honduras, where he is a citizen. When he was arrested on March 20, 2022, Mr. Ramirez told police that he had entered the United States in July 2021—a mere 16 months ago—and that he had a wife and child back in Honduras. He is currently in removal proceedings and is scheduled to appear in immigration court in April 2023.[12]

---

[9] The Alameda Crime Lab tested a portion of this substance and determined that it contained fentanyl.

[10] The substance tested presumptive positive for methamphetamine based on testing with a TruNarc Analyzer.

[11] Mr. Ramirez was not arrested in connection with this incident to avoid compromising a planned operation to arrest Mr. Ramirez and search his residence and vehicle on November 3, 2022.

[12] According to Department of Homeland Security records, Mr. Ramirez was also arrested by immigration authorities in Texas in February 2019.

Mr. Ramirez does not have a stable residence in the Bay Area. When he was arrested in March 2022, he told police that he was living with a girlfriend and her children at an address on Geary Street in San Francisco. The incident report for Mr. Ramirez's May 2022 arrest lists an address on East Street in Oakland as Mr. Ramirez's residence. And the November 3 search warrant execution, as well as location data associated with Mr. Ramirez's cell phone, confirmed that Mr. Ramirez has been living at an address on Avenal Avenue in Oakland most recently.

Mr. Ramirez also appears to lack stable, lawful employment in the Bay Area. In connection with its investigation of Mr. Ramirez, law enforcement obtained historical and prospective location data for Mr. Ramirez's cell phone, which indicated that Mr. Ramirez spent most of his evenings in the Tenderloin and Mid-Market neighborhoods of San Francisco, where he appears to have worked trafficking narcotics.

## II.   LEGAL STANDARD

Under the Bail Reform Act of 1984, the Court must detain a defendant before trial without bail where "the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person in the community." 18 U.S.C. § 3142(e)(1). Detention is appropriate where a defendant is either a danger to the community or a flight risk; the government need not prove that both factors are present. *United States v. Motamedi*, 767 F.2d 1403, 1406 (9th Cir. 1985). A finding that a defendant is a danger to the community must be supported by clear and convincing evidence, but a finding that a defendant is a flight risk need only be supported by a preponderance of the evidence. *Id.* "[T]he Bail Reform Act mandates an individualized evaluation guided by the factors articulated in [18 U.S.C.] § 3142(g)." *United States v. Diaz-Hernandez*, 943 F.3d 1196, 1199 (9th Cir. 2019). Categorical grants or denials of bail, not tethered to an individualized determination, are impermissible. *Id.* Consideration of factors outside the articulated factors set forth in Section 3142 is also disfavored. *Id.*

Where there is probable cause that a defendant has violated the Controlled Substances Act and faces a maximum of 10 years in prison or more (as here), courts apply a rebuttable presumption against the defendant that no condition or combination of conditions reasonably will assure the defendant's appearance as required and the safety of the community. *See* 18 U.S.C. § 3142(e)(3)(A). Under this

scheme, the burden of production then shifts to the defendant. *United States v. Hir*, 517 F.3d 1081, 1086 (9th Cir. 2008). Although the presumption is rebuttable, it is not a "bursting bubble." *United States v. Jessup*, 757 F.2d 378, 382-83 (1st Cir. 1985) (Breyer, J.), *abrogated on other grounds by United States v. O'Brien*, 895 F.2d 810 (1st Cir. 1990). In other words, the presumption is not so weak that if a defendant introduces evidence, "the presumption 'bursts' and totally disappears, allowing the judge (or jury) to decide the question without reference to the presumption." *Id.* (further stating that such an approach would "render the presumption virtually meaningless" because a defendant can "always provide the magistrate with *some* reason" (emphasis added)). Even if the defendant rebuts the presumption, the presumption is not erased; instead, it remains in the case as an evidentiary finding militating against release that is to be weighted along with other relevant factors. *See United States v. King*, 849 F.2d 485 (11th Cir. 1988); *accord United States v. Ward*, 63 F. Supp. 2d 1203, 1209 (C.D. Cal. 1999) (citing *Jessup*, 757 F.2d at 389).

If the court concludes that the defendant has rebutted the statutory presumption of detention, the court must consider four factors in determining whether the pretrial detention standard is met. Those factors are: (i) the nature and circumstances of the offense charged; (ii) the weight of the evidence against the defendant; (iii) the history and characteristics of the defendant, including the defendant's character, physical and mental condition, family and community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings, as well as whether the crime was committed while the defendant was on probation or parole; and (iv) the nature and seriousness of the danger to any person or to the community that would be posed by the defendant's release. *See* 18 U.S.C. § 3142(g); *United States v. Winsor*, 785 F.2d 755, 757 (9th Cir. 1986).

### III.  ARGUMENT

####   A.  Mr. Ramirez Is Subject to a Presumption in Favor of Detention

The complaint alleges two violations of 21 U.S.C. § 841(a)(1) and each of those alleged violations carries a statutory maximum penalty of more than ten years' imprisonment. As such, Mr. Ramirez is subject to a rebuttable presumption in favor of detention. *See* 18 U.S.C. § 3142(e)(3)(A). In order to overcome this presumption, Mr. Ramirez bears the burden to prove that he is not a flight risk

*and* that his release will not endanger the community. He cannot do so here.

### B. Mr. Ramirez Cannot Rebut the Presumption That He Poses a Danger to the Community

The record demonstrates that Mr. Ramirez poses a danger to the community. As set forth above, he appears to make his living by selling narcotics, including significant quantities of fentanyl—a drug that has wreaked havoc on San Francisco residents. He does so notwithstanding the ongoing state proceedings arising from his May 2022 narcotics-related arrest, and also in repeated defiance of the July 27, 2022, stay away order that was issued in connection with those proceedings. Mr. Ramirez's "continuing involvement with the distribution of drugs" militates in favor of detention. *United States v. Wolf*, 2015 WL 4573039, at *3 (N.D. Cal. July 29, 2015); *United States v. Fulgham*, 2012 WL 2792439, at *4 (N.D. Cal. July 9, 2012) ("The Senate Report states: The Committee also emphasizes that the risk that a defendant will continue to engage in drug trafficking constitutes a danger to the safety of any other person or the community. Defendant's tendency to repeatedly commit similar crimes shows that he poses an unmitigable danger to the community." (quotation marks and citation omitted)).

Mr. Ramirez's history of weapons possession further reinforces the danger he poses to the community. As noted above, he was arrested in May of this year for possessing a firearm that was in a bag with a fully loaded 31-round extended magazine. And when his residence was searched on November 3, law enforcement seized a loaded handgun that was concealed beneath Mr. Ramirez's clothing in a cardboard box. These facts not only reinforce the danger that Mr. Ramirez poses, but also suggest that he has violated federal firearms laws on multiple occasions. *See* 18 U.S.C. § 922(g)(5) (unlawful for an alien illegally in the United States to possess a firearm or ammunition).

### C. Mr. Ramirez Cannot Rebut the Presumption That He Poses a Flight Risk

Pretrial detention is also warranted because of the defendant's risk of flight. Mr. Ramirez is unlawfully in the United States and is currently subject to removal proceedings. He is only 20 years old and arrived in the United States relatively recently, as he told police earlier this year. He lacks a stable residence and appears to have resided in at least three different locations in the past nine months. He also appears to lack stable, lawful employment in this District. In short, Mr. Ramirez has minimal connections to the community. By contrast, he has significant ties to Honduras, where he is a citizen.

Mr. Ramirez appears to have spent most of his life in Honduras and he has close family there, including a wife and child.

The crimes alleged in the complaint carry serious penalties and, based on the amount of drugs Mr. Ramirez sold the UC, he could face a potential 5-year mandatory minimum sentence. This presents Mr. Ramirez with a compelling reason to violate court-ordered conditions of release and flee the District to avoid accountability.

**IV.    CONCLUSION**

There is no set of conditions that will reasonably assure the appearance of the defendant at court proceedings or ensure the safety of the community. The Court should order the defendant detained pending trial.

DATED: November 8, 2022                                        Respectfully submitted,

STEPHANIE M. HINDS
United States Attorney

 */s/ Jared Buszin*_____
Jared S. Buszin
Assistant United States Attorney