ISMAIL J. RAMSEY (CABN 189820)
United States Attorney

MARTHA BOERSCH (CABN 126569)
Chief, Criminal Division

ROLAND CHANG (CABN 271511)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7108
    Fax: (415) 436-7027
    Roland.Chang@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> ENRIQUE RAMIREZ, <br><br> Defendant. | No. CR 22-438 VC <br><br> **UNITED STATES' SENTENCING MEMORANDUM** <br><br> Hearing Date: November 6, 2024 <br> Time:     1:00 p.m. <br> Courtroom: No. 4, 17th Floor <br> Judge:    Hon. Vince Chhabria |

**I.      INTRODUCTION**

Defendant Allan Enrique Ramirez Mayorquin ("Ramirez") has pled guilty to the four counts in the indictment charging him with two counts of possession with intent to distribute and distribution of fentanyl, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C), one count of possession with intent to distribute and distribution of 40 grams and more of a mixture and substance containing fentanyl, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B)(vi), and one count of possession with intent to distribute and distribution of 50 grams and more of a mixture or substance containing methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B)(viii). Sentencing is set for November 6, 2024.

In 2022, over the course of four controlled buys by an undercover agent, as well as a search of

his residence, Ramirez was found to be in possession of approximately 267.7 grams of fentanyl and approximately 56.9 grams of methamphetamine—controlled substances that he possessed with the intent to distribute. When law enforcement arrested him in November 2022 based on federal charges, they seized a loaded Smith & Wesson firearm within his personal belongings at his residence. While these federal charges were pending, Ramirez obstructed justice by absconding from pretrial supervision and fleeing across the country to Louisiana. Federal law enforcement expended significant resources to locate and apprehend the defendant before he pled guilty to all the charges in this case.

For the reasons below, considering the factors set forth in 18 U.S.C. § 3553(a), the government respectfully recommends that the Court sentence Ramirez to a term of imprisonment of 72 months, a four-year term of supervised release, and a special assessment of $100.

II.   **OFFENSE CONDUCT AND SENTENCING GUIDELINES CALCULATION**

   **A.  Factual Background**

   **1.  Ramirez Sells Significant Amounts of Fentanyl and Methamphetamine in Four Separate Controlled Buys to an Undercover Agent**

On or about August 31, 2022, Ramirez was contacted on his cell phone by an individual who indicated he wanted to buy "yello," which the defendant understood to be a reference to fentanyl. Ramirez agreed to meet the individual in San Francisco's Tenderloin District, and that evening he approached the individual's vehicle near the intersection of Hyde Street and O'Farrell Street, at which time the defendant sold the individual approximately 8.74 grams of fentanyl for $100. At the time of the sale, the defendant did not know that the individual to whom he sold the drugs was an undercover agent.

On or about September 15, 2022, the same undercover agent to whom Ramirez had sold fentanyl on August 31, 2022, contacted him again. The undercover agent asked Ramirez how much an ounce of "yello" would cost, to which he replied "$450." Later that night, Ramirez met the undercover agent again near the intersection of Hyde Street and O'Farrell Street in San Francisco and sold him approximately 30.1 grams of fentanyl for $450.

On or about September 27, 2022, the same undercover agent to whom Ramirez had sold fentanyl on August 31 and September 15 contacted the defendant again on his cell phone. The agent told Ramirez

that he wanted to buy "2 ounces of yello," which the defendant understood to be a reference to two ounces of fentanyl. Ramirez told the agent to meet him in the vicinity of 833 Mission Street between 4th Street and 5th Street in San Francisco. When the agent arrived, the defendant got into the passenger seat of his vehicle and sold the agent approximately 58.1 grams of fentanyl for $900. The agent asked Ramirez if he could buy "crystal" next time, which the defendant understood to be a reference to methamphetamine. Ramirez told the agent that he could sell him methamphetamine in the future.

On or about October 4, 2022, the same undercover agent contacted Ramirez again on my cell phone and asked if the defendant could sell him $500 of "crystal," which he understood to be a reference to methamphetamine. The defendant told the agent he could and added that he was "going to love that crystal." Later that day, Ramirez met the agent in the vicinity of 1045 Mission Street between 6th Street and 7th Street in San Francisco. When the agent arrived, the defendant got into the passenger seat of his vehicle and sold the agent approximately 56.9 grams of methamphetamine for $500.

On or about November 3, 2022, law enforcement arrested Ramirez after he left his residence in Oakland carrying a backpack. Inside the backpack, the defendant had baggies of fentanyl weighing approximately 113 grams gross weight, which he intended to sell, as well as an operable digital scale. After Ramirez was arrested, law enforcement searched his residence in Oakland, which he shared with two other individuals. While searching common areas at the defendant's residence, law enforcement seized approximately 57.8 grams of fentanyl that was located on top of a cabinet in the kitchenette. Law enforcement also seized a cardboard box; inside the box was a pair of pants that belonged to Ramirez, documents belonging to Ramirez, including a property receipt and DUI court documents, and a loaded Smith & Wesson firearm.

**2. Ramirez Absconds During Pendency of This Federal Case**

On or about October 1, 2023, while Ramirez's federal case was still pending, United States Pretrial Services informed the United States Attorney's Office for the Northern District of California that Ramirez had cut off his ankle monitor and was no longer in contact with his Pretrial Services Officer. On or about October 1, 2023, United States Magistrate Judge Lisa J. Cisneros issued a sealed no-bail warrant for Mr. Ramirez's arrest based on the bond violations reported by Pretrial Services on that date.

On October 4, 2023, Ramirez failed to appear for a previously scheduled status conference hearing before this Court in connection with his pending federal case. On April 3, 2024, because of significant federal investigative process and efforts, law enforcement located and arrested Ramirez in Lafayette, Louisiana.

### B. Procedural Background

On October 31, 2022, United States Magistrate Judge Thomas S. Hixson approved a two-count criminal complaint charging Ramirez with distribution and possession with intent to distribute a Schedule II controlled substance, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C), and distribution and possession with intent to distribute 50 grams or more of a mixture or substance containing methamphetamine, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B)(viii).

On November 17, 2022, a federal grand jury in the Northern District of California returned a four-count indictment charging him with two counts of possession with intent to distribute and distribution of fentanyl, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C), possession with intent to distribute and distribution of 40 grams and more of a mixture and substance containing fentanyl, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B)(vi), and possession with intent to distribute and distribution of 50 grams and more of a mixture or substance containing methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B)(viii).

On July 17, 2024, Ramirez pleaded guilty to all four counts charged in the indictment without a plea agreement. Sentencing is set for November 6, 2024 before this Court.

### C. The Draft PSR Accurately Calculated the Offense Level and Criminal History Category

The government agrees with Probation's offense-level calculation in the draft PSR, which were as follows:

a. Base Offense Level, U.S.S.G. § 2D1.1(a)(5), (c)(6):  28

b. Specific Offense Characteristics

U.S.S.G. § 2D1.1(b)(1),
possession of a dangerous weapon (including a firearm):  +2

c. Obstruction of Justice, U.S.S.G. §3C1.1:  +2

UNITED STATES' SENTENCING MEMO    4
CR 22-438 VC

   d.  Adjusted Offense Level:                  32

Draft PSR ¶¶ 21-31. As noted in the Final PSR, the offense level calculation in Probation's report changed since disclosure of the draft report, based on consideration of objections made by the defendant. PSR at 20. For the reasons described below, the government disagrees with these revisions.

  As an initial matter, the government agrees with the base offense level of 28 in the Final PSR. This computation appropriately calculates the drug quantity of fentanyl in this case at 267.7 grams, which is a converted drug weight of 669.25 kg, as well as the drug quantity of methamphetamine at 56.9 grams, which is a converted drug weight of 113.80 kg. In total, the converted drug weight is 783.05 kg, which results in the base offense level of 28 under U.S.S.G. §§ 2D1.1(a)(5) and (c)(6). PSR ¶ 23. The government also agrees with Probation's two-point enhancement for obstruction of justice, as Ramirez absconded from pretrial supervision and fled to Louisiana, until federal law enforcement expended significant resources, including search warrants, to track down and apprehend the defendant.[1]

  However, the government disagrees with the following new calculations in the Final PSR: (i) the two-point reduction for acceptance of responsibility under U.S.S.G. § 3E1.1(a); and (ii) the two-point reduction for the defendant being a Zero-Point Offender under U.S.S.G. §§ 4C1.1(a) and (b). **First,** the Guidelines state that unless there is an extraordinary case, "[c]onduct resulting in an enhancement under §3C1.1 (Obstructing or Impeding the Administration of Justice) ordinarily indicates that the defendant has not accepted responsibility for his criminal conduct." Application Note 4 to U.S.S.G. § 3E1.1. There are no facts in the record, much less extraordinary facts, to support acceptance of responsibility when Ramirez's absconding conduct plainly establishes the contrary. **Second,** U.S.S.G. § 4C1.1(a)(7) makes it clear that a defendant cannot be a Zero-Point Offender if he possessed a firearm in connection with the offense. Here, when law enforcement arrested Ramirez on November 3, 2022, they seized a loaded Smith & Wesson firearm in a cardboard box with the personal belongings of the defendant including court documents and a property receipt, *i.e.*, the firearm was in his possession. As noted below, this was not the first time Ramirez was arrested with controlled substances and a firearm. In

---

[1] "[E]scaping or attempting to escape from custody before trial or sentencing; or willfully failing to appear, as ordered, for a judicial proceeding" is listed as an example of obstructive conduct. *See* Application Note 4(E) to U.S.S.G. § 3C1.1.

UNITED STATES' SENTENCING MEMO    5
CR 22-438 VC

May 2022, the SFPD arrested Ramirez after a traffic stop where they seized suspected fentanyl, cocaine base, and a Glock firearm with an extended magazine in the car that he was driving. PSR ¶ 36.

The government agrees that Ramirez's criminal history category is I. PSR ¶ 35. Total Offense Level 32 at CHC I yields a Guidelines range of 121 to 151 months.

### III.  SENTENCING RECOMMENDATION

#### A. Legal Standard

The United States Sentencing Guidelines serve as "the starting point and the initial benchmark" of any sentencing process and are to be kept in mind throughout the process. *See United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008); *see also United States v. Kimbrough*, 522 U.S. 85, 108 (2007). The overarching goal of sentencing, as set forth by Congress, is for the Court to "impose a sentence sufficient, but not greater than necessary." *Carty*, 520 F.3d at 991 (citation omitted). In accomplishing that goal, the Court should consider the factors set forth under 18 U.S.C. § 3553(a), which include:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(3) the need for the sentence imposed to afford adequate deterrence to criminal conduct; and

(4) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

#### B. Probation's Recommendation

Probation has recommended that Ramirez be sentenced to a term of imprisonment of 60 months, supervised release of 4 years, and a special assessment of $400. PSR at 22-23.

#### C. Government's Recommended Term of Imprisonment

The government recommends a term of imprisonment of 72 months, which is a significant downward variance from the Guidelines range for Ramirez's conduct and criminal history category, as such a sentence appropriately balances the § 3553(a) factors, recognizing the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, and to afford adequate

deterrence, as well as considering the defendant's history and characteristics.

### 1. *Nature and circumstances of the offense and history and characteristics of the defendant*

The defendant Allan Enrique Ramirez Mayorquin is a 22-year-old man who was born in Tegucigalpa, Honduras. Ramirez does not have any criminal convictions. However, since March 2022, Ramirez was arrested three times on state charges—twice in San Francisco and once in Broadmoor—for possessing with intent to sell various narcotics, including fentanyl, methamphetamine, and cocaine base. PSR ¶¶ 36-38. During the second of those three arrests, police seized a Glock handgun, an extended magazine containing 31 rounds of ammunition (the maximum capacity), and multiple baggies containing suspected fentanyl and cocaine base, as well as a digital scale, in a car that Ramirez was driving. His March 2022 arrest remains pending in San Mateo County for prosecution, and state court proceedings in San Francisco are pending in connection with his July 2022 arrest. In other words, the four controlled buys in this federal investigation were not isolated incidents. Instead, these acts were part of an ongoing and consistent pattern of behavior by Ramirez to engage in drug trafficking activity, which included distributing significant amounts of fentanyl and methamphetamine—drugs that are driving the surge in accidental overdose deaths in our community.

The relevant facts are set forth in the PSR, this Sentencing Memorandum, and the affidavit in support of the Criminal Complaint filed in this matter. *See* Dkt. 1. On July 17, 2024, Ramirez pleaded guilty to the four counts in the indictment.

<u>Aggravating Factors</u>. The nature and circumstances of the offenses of conviction are serious. Ramirez sold significant amounts of fentanyl and methamphetamine to an undercover officer on multiple occasions, and possessed these substances for sale in the midst of a public health crisis stemming from the use of synthetic opioids and synthetic narcotics. The defendant appears to have no qualms about repeatedly selling and possessing for sale dangerous narcotics. His continued pattern of doing so poses a serious public safety risk. Moreover, Ramirez's illegal possession of a firearm, when he was apprehended in November 2022, is similarly concerning. Separately, as noted above, Ramirez has two pending state arrests related to possessing controlled substances for sales—charges that will

likely be dismissed upon imposition of a federal sentence in this case. Finally, Ramirez absconded from federal pretrial supervision, fleeing across the country to Louisiana, which forced the government to devote investigative resources across multiple jurisdictions to apprehend and arrest him.

<u>Mitigating Factors</u>. Ramirez does not have any current criminal convictions. He is a young man who is only 22 years old. PSR ¶ 20. The defendant has little formal education and stopped attending school after age nine to assist with his family's farm in a rural area of Honduras. PSR ¶¶ 44-45. Ramirez grew up under modest circumstances in Honduras, and it appears that the defendant has also worked different construction-related jobs while being in the United States. PSR ¶¶ 57-58.

> **2.** *Need for the sentence to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment; to afford adequate deterrence to criminal conduct; and to protect the public from further crimes of the defendant*

Given the charged conduct and Ramirez's history and characteristics, the government recognizes that the proposed sentence of 72 months is a significant downward variance from the Guidelines range. But it is one that the government submits is appropriate given the defendant's conduct, his criminal history and relative youth, and the need for deterrence and protection of the public. Here, Ramirez absconding from federal pretrial supervision and fleeing across the country warrants additional punishment, when considered in conjunction with the seriousness of the drug charges. A sentence at the mandatory minimum of 60 months based on the two fentanyl and methamphetamine distribution convictions under 21 U.S.C. § 841(a)(1) and (b)(1)(B)(vi), (b)(1)(B)(viii) would not fully reflect the seriousness of these offenses and provide an inadequate deterrent to the defendant's obstructive conduct. More specifically, the government considered the following factors in this sentencing recommendation: (1) the significant amounts of fentanyl and methamphetamine possessed by Ramirez with the intent to distribute; (2) the number of undercover controlled buys, which indicate that the defendant was consistently and repeatedly selling drugs; (3) the illegal possession of a firearm; (4) the pending state arrests for narcotics distribution; and (5) Ramirez's absconding from pretrial supervision during this case.

However, it is important to consider mitigating factors that exist and the necessity to not impose

a sentence that is more than necessary to comply with the requirements of Section 3553(a). While Ramirez's conduct has been persistent and troubling, it also requires us to acknowledge that within the federal ecosystem of narcotics offenders, the defendant occupies the lower range of transgressive conduct, and does not appear to occupy a position of responsibility within a drug trafficking organization.

The government's recommendation of 72 months takes these factors into consideration, balancing the aggravating and mitigating factors noted in the PSR and this Sentencing Memorandum. This sentence will provide the defendant an opportunity to reflect on the dangerous, potentially fatal consequences of his actions and protect the public from an individual who has proven himself committed to a lifestyle peddling dangerous and illegal narcotics, as well as the possession of firearms. A custodial sentence with a significant downward variance from the Guidelines thus balances both accountability and deterrence, while leaving room for the need for rehabilitation and the possibility for change while defendant is still a young man with his life in front of him.

Finally, the government agrees with Probation's recommendation that the Court impose a four-year term of supervised release, which is required by statute for the drug-trafficking offenses to which the defendant has agreed to plead guilty, 21 U.S.C. §§ 841(b)(1)(B)(vi) and (b)(1)(B)(viii), and it is essential to this disposition.

**IV.    CONCLUSION**

For the foregoing reasons, the government respectfully recommends that the Court sentence Ramirez to a term of imprisonment of 72 months, a four-year term of supervised release, forfeiture, and a special assessment in the amount of $400.